UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| JUNIOR L. CEPEDA, | REPORT |
|  | and |
|  | RECOMMENDATION |
| Plaintiff, | ---------------------------- |
| v. | DECISION |
|  | and |
| L. URBAN, and | ORDER |
| M. JAMALKOWSKI, |  |
|  | 12-CV-00408(F) |
| Defendants. |  |

_____

APPEARANCES:        JUNIOR L. CEPEDA, *Pro Se*
                    NARCO Freedom House # 19
                    ATTN: Junior Lorenzo Cepeda
                    2846 Briggs Avenue
                    Bronx, New York  10458

                    ERIC T. SCHNEIDERMAN
                    Attorney General, State of New York
                    Attorney for Defendants
                    GEORGE MICHAEL ZIMMERMAN
                    Assistant Attorney General, of Counsel
                    Main Place Tower
                    350 Main Street
                    Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on

June 10, 2014, for pretrial matters, including report and recommendation on dispositive

motions.  The matter is presently before the court on Defendants' motions to dismiss for

failure to state a claim (Docs. Nos. 11 and 21), respectively filed June 19, and October

10, 2013, and Plaintiff's motion for leave to file an amended complaint (Doc. No. 25), filed November 12, 2013.[1]

## BACKGROUND

On May 4, 2012, Plaintiff Junior L. Cepeda ("Plaintiff" or "Cepeda"), proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging that while incarcerated at Orleans Correctional Facility ("the correctional facility" or "Orleans"), he was the subject of a false misbehavior report ("the Misbehavior Report" or "MR"), and subsequently was denied procedural due process in connection with the administrative disciplinary hearing held with regard to the Misbehavior Report. Defendants to this action include the disciplinary hearing officer L. Urban ("Urban"), and the assigned inmate hearing assistant M. Jamalkowski ("Jamalkowski"), both employees of New York Department of Corrections and Community Supervision ("DOCCS").

On June 19, 2003, Defendant Jamalkowski filed a motion to dismiss for failure to state a claim (Doc. No. 11) ("Jamalkowski's Motion"), supported by the attached Memorandum of Law in Support of Defendant's Motion to Dismiss (Doc. No. 11-1) ("Jamalkowski's Memorandum"). In opposition, Plaintiff filed on July 1, 2003, his Memorandum of Law in Support of Plaintiff's Answer to Defendants' Motion to Dismiss (Doc. No. 14) ("Plaintiff's Response"). On October 10, 2013, Defendant Urban filed a motion to dismiss for failure to state a claim (Doc. No. 21) ("Urban's Motion"), supported by the attached Memorandum of Law in Support of Defendant Urban's Motion to

---

[1] Although Defendants' motions to dismiss are dispositive, whereas Plaintiff's motion seeking leave to file an amended complaint is nondispositive, all three motions are addressed in this combined Report and Recommendation/Decision and Order in the interests of judicial economy and clarity.

Dismiss (Doc. No. 21-1) ("Urban's Memorandum").  Plaintiff did not file any papers in opposition to Urban's Motion.

On November 12, 2013, Plaintiff filed his Motion for Leave to File an Amended Complaint (Doc. No. 25) ("Plaintiff's Motion"), attached to which is a copy of the proposed amended complaint ("Proposed Amended Complaint").  On December 16, 2013, Defendants' filed the Memorandum of Law in Opposition to Plaintiffs' Motion to Amend (Doc. No. 27) ("Defendants' Response").  Oral argument was deemed unnecessary.

## __FACTS__[2]

On April 11, 2012, while Plaintiff was incarcerated at Orleans Correctional Facility ("the correctional facility" or "Orleans"), Corrections Officer Moffatt ("C.O. Moffatt"), with the New York Department of Corrections and Community Supervision ("DOCCS"), conducted a frisk search of Plaintiff's cell, recovering Uniform Commercial Code ("UCC") materials, considered contraband under 7 NYCRR § 270.2[B][14][xx][113.30] ("Inmate Rule 113.30").  The unauthorized possession of certain UCC materials was banned by DOCCS Commissioner after it was determined that inmates often used UCC forms to file baseless and fraudulent liens or financing statements against DOCCS personnel and judicial officers for the sole purpose of harassing such individuals through credit impairment.  *See Neree v. O'Hara*, 2011 WL 3841551 at ** 1, 8 (N.D.N.Y. July 20, 2011), a*dopted by* 2011 WL 3841553 (Aug. 29, 2011).  On April 16, 2012, Plaintiff was served with the Misbehavior Report, charging Plaintiff with a violation of Inmate Rule 113.30 ("An inmate shall not possess any Uniform Commercial Code

---

[2] Taken from the pleadings and motion papers filed in this action.

(UCC) Article 9 form . . . .").  Although the contraband was found in Plaintiff's cell on April 11, 2012, the MR referred to the incident as having occurred on April 13, 2012.  On April 17, 2012, Plaintiff met with Defendant M. Jamalkowski ("Jamalkowski"), who had been assigned, pursuant to 7 NYCRR § 254.5, to assist Plaintiff in preparing for the Tier III superintendent's hearing on the MR ("hearing"), scheduled for April 25, 2012.  Plaintiff provided Jamalkowski with the names of witnesses for Jamalkowski to interview, along with a list of documents for Jamalkowski to retrieve for use in the hearing.  According to Plaintiff, Jamalkowski did not interview any of the witnesses nor retrieve any of the documents, as Plaintiff had requested, in violation of relevant DOCCS Directives and Regulations.

Defendant Hearing Officer L. Urban ("Urban"), presided over the hearing which commenced on April 25, 2012, at which time Plaintiff refuse to enter a plea of guilty or not guilty, instead contending the MR was defective because it incorrectly indicated the date of the search of Plaintiff's cell and subsequent seizure of the contraband as April 13, 2012, rather than April 11, 2012.  Urban advised Plaintiff the disciplinary hearing could continue in Plaintiff's absence, but Plaintiff was not removed from the room in which the hearing was conducted.  Urban then called as a witness Sgt. M. Ritter ("Ritter"), of Greene Correctional Facility ("Greene"), who testified he had previously confiscated UCC materials from Plaintiff when Plaintiff was housed in Greene's SHU, placing the materials in Plaintiff's property bag.  Plaintiff maintains that after the UCC material was confiscated from him at Greene, because Plaintiff was confined in SHU, he was unable to access his property bag to remove the UCC materials, and instead was again in possession of the materials on March 27, 2012, when Plaintiff received his

4

property bag from an unidentified corrections officer upon being transferred to Orleans. According to Plaintiff, because the UCC materials were considered contraband, upon their confiscation at Greene, the materials never should have been placed in Plaintiff's property bag.  Urban then adjourned the hearing for one day to review the evidence.

On April 26, 2012, the hearing reconvened with Urban entering a not guilty plea for Plaintiff over Plaintiff's objections, and informed Plaintiff Urban had placed a telephone call to Ulster Correctional Facility ("Ulster"), the correctional facility where Plaintiff was initially housed in DOCCS custody, and confirmed that upon being admitted to DOCCS custody, Plaintiff had received a copy of Inmate Rule 113.30. Plaintiff objected to Urban's investigation into the matter, requesting Urban to dismiss the MR for insufficient evidence.  Urban, however, denied the request, found Plaintiff guilty of possession of contraband in violation of Inmate Rule 113.30, and imposed a prison disciplinary sentence of 18 months in SHU with corresponding loss of privileges.

On April 26, 2012, Plaintiff filed an appeal of the hearing disposition, which was affirmed on June 21, 2012, by Acting Director of SHU D. Venettozzi, who modified Plaintiff's prison disciplinary sentence, reducing the SHU confinement and loss of privileges to 14 months.

## DISCUSSION

**1.     Dismissal for Failure to State a Claim**

Both Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") to dismiss the Complaint for failing to state a claim for which relief can be granted.  In particular, both Defendants Jamalkowski and Urban assert the Complaint must be

dismissed because Plaintiff has admitted he is guilty of the disputed disciplinary charge, and the Complaint alleges only violations of New York regulations which are insufficient to support a § 1983 claim, Jamalkowski's Memorandum at 2; Urban's Memorandum at 2. Jamalkowski also moves to dismiss the Complaint because Plaintiff failed to exhaust his administrative remedies. Jamalkowski's Memorandum at 2. A review of the papers establishes Defendant Jamalkowski's Motion should be GRANTED in part and DENIED in part, and Defendant Urban's Motion should be GRANTED.

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (accepting as true all factual allegations in the complaint and drawing all reasonable inferences in plaintiff's favor). Two recent Supreme Court cases require application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at  679).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.  Consideration is given only to facts stated on the face of the complaint, as well as to those facts appearing "in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999).  Further, the court is obligated to liberally construe a complaint alleging a § 1983 claim.  *Leonard Partnership v. Town of Chenango*, 779 F.Supp. 223, 234 (N.D.N.Y. 1991) (construing allegation by plaintiff, represented by counsel, that defendant town denied building permit as a due process violation even though § 1983 was not mentioned in the complaint where such construction did not prejudice town given that defendant itself had construed complaint as based on § 1983 and accordingly addressed claim).

Here, Plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983 ("§ 1983"), for alleged civil rights violations.  Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"  *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (quoting

42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of substantive rights.'"

*Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere

conferred'. . . ." *Id*.  The elements of a § 1983 claim include (1) the deprivation of a

federal constitutional or statutory right, and (2) by a person acting under color of state

law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S.

635, 640 (1980)).  In the instant case, that Defendants were acting under color of state

law in connection with the Superintendent's hearing on the MR charging Plaintiff with

possession of contraband, is undisputed, thus satisfying the second element.  The court

thus considers whether the Complaint states a claim for relief based on an alleged

violation of procedural due process.

     "To prove a violation of due process, a plaintiff must establish that (1) he

possessed a liberty interest and (2) defendants deprived him of that interest without

sufficient process."  *Walker v. Fisher*, 523 Fed.Appx. 43, 44 (2d Cir. 2013) (citing *Giano*

*v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)); *Ortiz v. McBride*, 380 F.3d 649, 654 (2d

Cir. 2004) (quoting *Giano,* 238 F.3d at 225).  An inmate's protected liberty interest is

implicated only where the conduct at issue imposes an "atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515

U.S. 472, 484 (1995).  Here, insofar as Plaintiff challenges the disciplinary sentence

imposed in connection with the guilty disposition of the MR, specifically, 18 months

confinement in SHU and concomitant loss of privileges, later reduced following appeal

to 14 months, as in violation of his constitutional rights, it is settled that "[a]lthough

prison inmates necessarily have their liberty severely curtailed while incarcerated, they

are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as . . . special confinement that imposes an atypical hardship." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)). *See J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) ("a prisoner has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S at 484)).  "In the absence of factual findings to the contrary, confinement of 188 days is a significant enough hardship to trigger *Sandin*." *J.S.*, 714 F.3d at 106 (citing *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) ("in the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short – less than [ ] 30 days . . . .")).  Here, as the matter is before the court on motions by both Defendants seeking to dismiss the action, there are no factual findings to the contrary.  Accordingly, Plaintiff's allegation of 14 months of SHU confinement "is sufficient to implicate *Sandin*-type liberty interests." *J.S.*, 714 F.3d at 106.

### A.      Exhaustion of Administrative Remedies

Defendant Jamalkowski argues for dismissal of the Complaint based on Plaintiff's failure to exhaust administrative remedies prior to commencing this action. Jamalkowski Memorandum at 5-6.  According to Jamalkowski, that Plaintiff filed his appeal of the hearing decision on April 26, 2012, the same day Plaintiff filed the Complaint in this action, establishes Plaintiff did not exhaust his administrative remedies prior to commencing the instant action, such that it is impossible to know the results of

the appeal, including whether Plaintiff's appeal was successful, overturning the guilty disposition or reducing the disciplinary sentence to a point where the sentence is not considered an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 6 (quoting *Sandin*, 515 U.S. at 484).  In opposition to Jamalkowski's motion, Plaintiff asserts that he exhausted the relevant administrative remedies merely by filing his appeal of the hearing disposition, Plaintiff's Response at 3, and advises that on June 21, 2012, D. Venettozzi, the Acting Director of SHU, reduced the MR hearing sanction imposed by Urban from 18 months to 14 months, which is sufficiently long to constitute an atypical and significant hardship.  *Id.* at 4.  Jamalkowski offers no argument in further support of his motion on this ground.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that a prison inmate may not bring an action challenging prison conditions under § 1983 "until such administrative remedies as are available are exhausted."  The exhaustion requirement gives DOCCS "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).  Requiring inmate claims challenging prison conditions to be administratively exhausted promotes efficiency when the administrative grievance procedure obviates the need for parties to further pursue matters in federal court.  *Id.*  In New York, the administrative process is pursuant to DOCCS's Inmate Grievance Program ("IGP"), a three tier process, requiring the inmate first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  7 NYCRR § 701.5(a)(1) and (b).  An adverse IGRC decision is appealable to the correctional facility's superintendent.  7 NYCRR § 701.5(c).  Finally, a

superintendent's adverse decision may be appealed to the Central Office Review Committee ("CORC").  7 NYCRR § 701.5(d).

It is settled that the phrase "prison conditions" as used in the PLRA refers to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Where, however, the conditions of confinement do not present the basis on which the inmate alleges he suffered harm, the inmate's failure to exhaust administrative procedures is not pursuant to New York DOCCS IGP; rather, because Plaintiff is challenging Defendants' conduct in connection with the hearing on the MR, Plaintiff's April 26, 2012, filing of the administrative appeal of the hearing decision was sufficient for purposes of PLRA exhaustion requirements.  *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (vacating district court's grant of summary judgment for failure to exhaust administrative remedies where plaintiff inmate alleged violations of due process rights in connection with prison disciplinary hearing, holding PLRA's exhaustion of administrative remedies was satisfied by inmate's filing of administrative appeal of hearing decision, which is a separate administrative appeals process pertaining to disciplinary actions).

Accordingly, Jamalkowski's motion to dismiss based on Plaintiff's failure to exhaust should be DENIED.

## B.    New York Regulations

Both Jamalkowski and Urban argue in support of their respective motions to dismiss that insofar as Plaintiff seeks relief based on a violation of a New York prison

regulation, a violation of a state prison regulation does not give rise to liability under §

1983.  Jamalkowski Memorandum at 6-7; Urban's Memorandum at 5.  In opposition,

Plaintiff argues that Defendants' actions were in violation of 7 NYCRR §§ 251-3.1(c)(3),

251-4.2, 254.1, and 254-6, [3] as well as New York's Constitution and, thus, the United

States Constitution giving rise to liability under § 1983.  Plaintiff's Response at 4-5.

Neither Defendant has further responded in support of dismissal on this point.

### 1.    Date on Inmate Misbehavior Report – 7 NYCRR § 251-3.1(c)(3)

Plaintiff alleges he was denied procedural due process because the MR

incorrectly indicated the date of the incident as April 13, 2012, rather than April 11,

2012.  Complaint at 5.  Defendants maintain an incorrect date on the MR is insufficient

to state a §1983 claim based on a denial of due process.  Jamalkowski's Memorandum

6-7; Urban's Memorandum at 5.  In opposition to dismissal, Plaintiff asserts that

because of the incorrect date on the MR in violation of 7 NYCRR §§ 251-3.1(c)(3),

Plaintiff did not receive proper notice of the disciplinary charges lodged against him, in

violation of his constitutional right to procedural due process.  Plaintiff's Response at 3-

4.

Under 7 NYCRR § 251-3.1(c)(3), an inmate misbehavior report must include "the

date, time and place of the incident."  Nevertheless, a violation of this regulation, without

more, does not necessarily result in liability under § 1983.  *See Patterson v. Coughlin*,

761 F.2d 886, 891 (2d Cir. 1985) ("state employee's failure to conform to state law does

not in itself violate the Constitution and is not alone actionable under § 1983).  In

---

[3] Although Plaintiff references 7 NYCRR § 253.6, that regulation pertains to procedures for disciplinary hearings, rather than procedures for superintendent's hearings, which are set forth under 7 NYCRR § 254.6.  Because the disciplinary hearing challenged by Plaintiff in this action was a superintendent's hearing, rather than a disciplinary hearing, the court substitutes the correct regulation, which is essentially identical to the regulation Plaintiff erroneously references.

particular, "a state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983," unless the violated state regulation "merely reiterated what was already *required* by the Constitution." *Id.* (italics in original).  Rather, in the context of a prison disciplinary hearing, procedural due process requirements are minimal, including "a notice that is something more than a mere formality." *Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) (citing *Benitez v. Wolff*, 985 F.2d 662, 665 (2d Cir. 1993)).  "The effect of the notice should be to compel 'the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged' to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Id.* (quoting *McKinnon v. Patterson*, 568 F.2d 930, 940 n. 11 (2d Cir. 1977)).  In the instant case, the allegations of the Complaint establish the MR was sufficiently specific as to inform Plaintiff of the misconduct with which he was charged to permit Plaintiff to defendant against the charge.

In particular, Plaintiff's allegation alone that the MR refers to the incident as occurring on April 13, 2012, rather than on April 11, 2012, Complaint at 5 ("Claimant read the [misbehavior] report and noticed that the incident date was wrong.  It stated a date of April 13, 2012 when in fact the incident occurred on April 11, 2012 with (UCC) material being confiscated at 9:50/[AM]"), establishes Plaintiff was aware on the incident to which the MR pertains.  Further, that Plaintiff provided the inmate assistant with the names of inmate witnesses to interview, along with a list of documents to be retrieved, Complaint at 6, establishes Plaintiff sufficiently understood the nature of the disciplinary violation with which he was charged in the MR so as to determine what evidence

Plaintiff needed to present in defending against the MR charge.  Significantly, Plaintiff does not contend how, as a practical matter, the two day discrepancy conceivably could have compromised his ability to defend against the MR.  For example, Plaintiff's whereabouts on whatever date the contraband was discovered would seem irrelevant to the possession of contraband charge.  Accordingly, the mere fact that the MR contained an incorrect date of the incident is, without more, insufficient to establish a due process violation, and Defendants' Motions should be GRANTED as to this claim.

### 2.    Inmate Assistant – 7 NYCRR § 251-4.2

Plaintiff alleges he was essentially denied an inmate assistant in connection with the disciplinary hearing because Jamalkowski, who was assigned to assist Plaintiff, failed to interview the witnesses identified by Plaintiff or to retrieve any of the documents Plaintiff had requested.  Complaint at 5-6.  According to Plaintiff, Jamalkowski's alleged failure to comply with Plaintiff's requests was in violation of DOCCS Directive # 4932 and 7 NYCRR § 251-4.2.  *Id.* at 6.  Jamalkowski argues such claim should be dismissed because Plaintiff's "bare assertion that Jamalkowski 'did not comply with his request' does not contain sufficient factual matter to state a claim to relief that is plausible on its face."  Jamalkowski's Memorandum at 7 (citing *Iqbal*, at 678).  According to Jamalowski, because Plaintiff does not specify whether Jamalkowski contacted any witnesses or retrieved any of the requested documents, "we only know that the plaintiff was dissatisfied with his assistance, probably because he was found guilty."  *Id.* at 7.  In opposition to Jamalkowski's Motion, Plaintiff asserts that because he was then being held in SHU, he was unable to pursue the witnesses and documents and depended on the inmate assistant to prepare his defense.  Plaintiff's Response at 5-6.

Among the procedural due process protections afforded a prison inmate with regard to a prison disciplinary proceeding are "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff*, 418 U.S. at 563-67).   Further, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges. . . . When the inmate is disabled . . . by being confined full-time to SHU, . . . the duty of assistance is greater because the inmate's ability to help himself is reduced." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1998) (citing *Aikens v. Lash*, 514 F.2d 55, 59 (7th Cir. 1975), *vacated on other grounds*, 425 U.S. 947 (1976)).   Significantly, an inmate assistant's failure to obtain testimony of witnesses requested by the inmate, or other evidence is a violation of the inmate's due process rights.  *Ayers v. Ryan,* 152 F.3d 77, 81 (2d Cir. 1998) (holding plaintiff inmate's due process rights were violated when defendant undertook to act as inmate's assistant, and then provided no assistance).

In the instant case, in support of dismissing this claim, Defendant Jamalkowski argues that Plaintiff's right to an inmate assistant is limited such that the assigned assistant "'is not obliged to go beyond the specific instructions of the inmate.'" Jamalkowski's Memorandum at 7 (quoting *Silva v. Casey*, 992 F.3d 20, 22 (2d Cir. 1993)).  *Silva*, however, is factually distinguishable insofar as the inmate assistant in *Silva* failed to advise the inmate plaintiff until the day of the hearing that the inmate

witnesses the plaintiff had requested were refusing to testify at the plaintiff's disciplinary

hearing.  *See Silva v. Coughlin*, 1992 WL 116744, at * 6 (S.D.N.Y. May 18, 1992).  The

court held that because the inmate assistant did interview the inmates the plaintiff had

identified as witnesses, obtaining from the witnesses signed statements indicating they

refused to testify on the plaintiff's behalf at his disciplinary, and despite the plaintiff's

protestation that had he received earlier notice from the inmate assistant of the

witnesses' refusal to testify, the plaintiff would have requested the inmate assistant to

make an effort to find other witnesses who would testify, the inmate assistant's failure to

go beyond the plaintiff's request to secure information favoring the plaintiff did not

violate any constitutional right of the plaintiff.  *Id.* at * 7.  To require such action by the

inmate assistant would be akin to recognizing an inmate plaintiff has the right to a

private investigator in preparing for a prison disciplinary hearing, a degree of assistance

not mandated by due process.  *Id.*  In contrast, Plaintiff alleged in the instant case that

Defendant Jamalkowski, after being assigned as Plaintiff's inmate assistant in

connection with the superintendent's hearing, did not  attempt to interview any of the

witnesses Plaintiff named, or to retrieve any of the documents.  Further, insofar as

Jamalkowski characterizes Plaintiff's claim that Jamalkowski "did not comply with said

request (list) given to him," Complaint at 7, as a "bare assertion" that fails to advise

whether Jamalkowski contacted any of the witnesses or retrieved any of the documents

Plaintiff identified, Jamalkowski's Memorandum at 7, a plain reading of the Complaint's

allegation establishes that Plaintiff is not alleging Jamalkowski failed to go above and

beyond what Plaintiff had requested, but only that Jamalkowski did not provide Plaintiff

with the requested assistance as required, or a reason why such compliance was not

possible.  *See Russell v. Selsky*, 35 F.3d 55, 58 (2d Cir. 1994) (citing *Ponte v. Real*, 471

U.S. 491, 499 (1985) (holding some explanation must be provided either at the time of

the disciplinary hearing or subsequently in court, even if only *in camera*, establishing

why requested inmates would not be testifying), and *Scott v. Kelly*, 962 F.2d 145, 146-

47 (2d Cir. 1992) (observing that for due process purposes "a prisoner's request for a

witness can be denied on the basis of irrelevant or lack of necessity.")).

The adverse consequences of Jamalkowski's failure to provide Plaintiff with

effective assistance in connection with the hearing on the MR are illustrated by a liberal

construction of the Complaint, as Plaintiff's *pro se* status requires, *Haines v. Kerner*, 404

U.S. 519, 520 (1972) (allegations of *pro se* litigant's complaint are held "to less stringent

standards than formal pleadings drafted by lawyers."), that strongly suggests Plaintiff is

alleging the MR was fraudulently issued.  *See* Complaint at 8 (alleging after Greene

Sergeant Ritter confiscated UCC materials from Plaintiff, Ritter placed the materials in

Plaintiff's property bag which, as Plaintiff was being held in SHU, Plaintiff was not able

to inspect prior to his transfer to Orleans, where the documents were returned to

Plaintiff "along with [Plaintiff's] allowable property," and the same UCC materials were

confiscated from Plaintiff on April 11, 2012).  "[I]t is well settled that a 'prison inmate has

no constitutionally guaranteed immunity from being falsely or wrongly accused of

conduct which may result in the deprivation of a protected liberty interest.'"  *Williams v.

Dubray*, __ Fed.Appx. __; 2014 WL 715653, at * 2 (2d Cir. 2014) (quoting *Freeman v.

Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  "Instead, the inmate must show something

more, such as that he was deprived of due process during the resulting disciplinary

hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise

of his constitutional rights." *Id.* (citing *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.

1997); and *Freeman*, 808 F.2d at 951). In the instant case, had Plaintiff been provided

with effective inmate assistance, it is reasonably plausible that Plaintiff may have

successfully defended the MR on the basis that by placing the UCC materials

confiscated from Plaintiff at Greene in Plaintiff's property bag, to which Plaintiff, by virtue

of his confinement in Greene's SHU, was prevented access, Plaintiff was set up for the

subsequent confiscation of the same contraband upon his transfer to Orleans, leading

to the issuance of a false misbehavior report. *See Livingston v. Kelly*, 561 F.Supp.2d

329, 331 (W.D.N.Y. 2008) ("an inmate's allegation that he has been found guilty of false

disciplinary charges may support a constitutional claim if he also alleged that he was

denied the minimum procedural due process protections guaranteed by the Fourteenth

Amendment." (citing cases)).

     In short, Jamalkowski, according to the Complaint, failed to act as Plaintiff's

"surrogate – to do what the inmate would have done were he able," but no more, *Silva*

*v. Casey*, 992 F.3d at 22, and Jamalkowski's alleged failure to do so states a plausible

denial of due process claim under the Fourteenth Amendment. Plaintiff has thus stated

a claim for relief against Jamalkowski which should not be dismissed for failure to state

a claim.

### 3.     Hearing Officer - 7 NYCRR §§ 254.1 and 254.6

     Plaintiff alleges he was denied due process when Defendant Urban, who served

as the hearing officer at the hearing on the MR, failed to abide by relevant prison

disciplinary proceeding regulations including conducting the proceeding despite

Plaintiff's refusal to participate and failing to electronically record the proceeding, in

violation of 7 NYCRR § 254.6 (§ 254.6"), and conducted his own investigation into the incident by taking testimony from DOCCS Sergeant Ritter at Greene Correctional Facility, and failed to recuse himself upon Plaintiff's request, in violation of 7 NYCRR § 254.1 (" § 254.1").  Complaint at 8-9.  In support of dismissal, Urban argues that the alleged violation of a DOCCS regulation does not give rise to liability under § 1983, Urban's Memorandum at 5; the Complaint fails to allege any violation of the constitutionally mandated due process standard for prison discipline, *id.* at 6-8; and that factual allegations in the Complaint establish Plaintiff is guilty of the disciplinary charge for which he was sentenced to SHU and lost privileges.  *Id.* at 8-10.  Plaintiff did not respond in opposition to Urban's Motion.

State statutes and regulations do not create federally protected due process rights to specific state-mandated procedures; rather, the only process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*, 418 U.S. at 561-70.  *Shakur v. Selsky*, 391 F.3d 106, 118-19 (2d Cir. 2004).  Nor do "[s]tate procedures designed to protect substantive liberty interests entitled to protection under the federal constitution [ ] themselves give rise to additional substantive liberty interests." *Blouin v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004) (citing cases).  Simply put, "federal law, not state regulations, determines the procedures necessary to protect that liberty interest." *Id.*  As such, "the *only* relevant inquiry [is] whether constitutional 'minimal procedures' [for the loss of a protected liberty interest] were met, not whether state procedures were followed."  *Shakur*, 391 F.3d at 119 (italics in original).

With regard to Plaintiff's claim that Defendant Urban, by contacting, on his own initiative, Sergeant Ritter at Greene, to ascertain whether Ritter had previously

confiscated contraband UCC materials from Plaintiff while Plaintiff was housed in SHU at Greene, conducted his own investigation into the incident, in violation of § 254.1, which provides that a person who has investigated the incident on which an inmate's misbehavior report is predicated may not be appointed to conduct the superintendent's hearing relative to that misbehavior report, and thus was disqualified to serve as the hearing officer at the hearing on the MR.  Complaint at 8.  Plaintiff further claims that Urban further violated § 254.1 when he subsequently contacted Ulster Correctional Facility ("Ulster"), where Plaintiff commenced his incarceration with DOCCS, to ascertain whether, upon entering Ulster, Plaintiff had received a copy of the inmates' rulebook, including Inmate Rule 113.30, pursuant to which, as of April 11, 2009, UCC materials were considered contraband such that inmates found in possession of such materials would be subject to discipline.  *Id.*

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer."  *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing cases).  Nevertheless, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally."  *Id.* (citing cases).  Relevantly, in addition to the greater flexibility accorded prison disciplinary hearing officers, the due process impartiality standard is satisfied if "some evidence" in the record supports the decision of the prison disciplinary proceeding.  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).

Here, Defendant Urban's determination that Plaintiff was guilty of the charged prison infraction – possession of contraband, specifically, UCC materials in violation of

20

Inmate Rule 113.30 – is amply supported by evidence in the record.  In particular,

Plaintiff does not dispute that the UCC material was found in his cell, nor does Plaintiff

argue the UCC material does not qualify as contraband under Inmate Rule 113.30.

Significantly, Urban's asserted investigation into the incident did not bear on whether

Plaintiff was, in fact, in possession of the contraband UCC materials at Orleans but,

rather, the facts as alleged by Plaintiff establish that UCC materials had previously been

confiscated from Plaintiff as contraband when Plaintiff was housed at Greene and

should have been aware of their illegal nature.  Thus, given that sufficient evidence

supports Plaintiff's guilt as Urban determined, that Urban investigated two matters

having only tangential relevant to the MR, Urban's impartiality was not compromised to

the extent that Plaintiff was denied fundamental due process in the conduct of the

hearing.  Accordingly, because some evidence in the record supports Urban's

determination that Plaintiff was in possession of UCC material in violation of Inmate

Rule 113.30, Plaintiff fails to state a due process claim based on the alleged violation of

§ 254.1.  *See Allred v. Knowles*, 2010 WL 3911414, at * 5 (W.D.N.Y. Oct. 5, 2010)

(holding violation of § 254.1 insufficient to state a claim for a deprivation of federal due

process based on the hearing officer's investigation into incident for which inmate was

subjected to prison disciplinary measures including 12 months confinement in SHU with

simultaneous loss of privileges).

As relevant to this case, § 254.6(a)(2) provides that a prison hearing officer, upon

receiving a misbehavior report from the review officer, is required to electronically

record the entire hearing, at which the inmate shall be present unless he refuses or is

excluded for reasons of institutional safety or correctional goals.  7 NYCRR §

254.6(a)(2).  Insofar as Plaintiff challenges Defendants' failure to record the hearing,

§ 254.6(a)(2) provides a procedural requirement in excess of that required by federal

due process such that the failure to abide by § 254.6(a)(2) does not run afoul of the

basic federal due process required for an inmate disciplinary proceeding.  *See Proctor*

*v. Kelly*, 2008 WL 5243925, at * 8 (N.D.N.Y. Dec. 16, 2008) (holding violations of state

regulations, including 7 NYCRR § 254.6(a)(2), by failing to record prison disciplinary

proceeding, does not give rise to any constitutional violations).

Furthermore, insofar as Plaintiff alleges that Urban's proceeding with the hearing

despite Plaintiff's refusal to participate was tantamount to conducting the hearing in

Plaintiff's absence in violation of § 254.6(a)(2), the regulation provides "[t]he inmate

shall be present at the hearing unless he or she refuses to attend, or is excluded for

reasons of institutional safety or correctional goals."  7 NYCSS § 254.6(a)(2).  As stated

in the Complaint, Plaintiff maintains that because he did not refuse to attend the

hearing, did not pose any threat to institutional safety or correctional goals, and was not

removed from the hearing, Urban erroneously conducted the hearing despite Plaintiff's

refusal to participate on the basis that the incorrect date on the MR rendered it, as well

as the ensuing disciplinary proceeding, invalid.  Complaint at 7-8.  There is, however, no

merit to this argument because although Plaintiff was present at the disciplinary

proceeding, his refusal to participate in the proceeding was properly construed by Urban

as tantamount to a refusal to attend the proceeding.  Moreover, Plaintiff fails to explain

why the minor discrepancy as to the correct date of the violation adversely affected his

ability to dispute the charge and the court is unable to perceive any such reason.

Defendant Jamalkowski's motion is thus GRANTED in part and DENIED in part; Defendant Urban's motion is GRANTED.  Furthermore, although dismissal for failure to state a claim is often without prejudice to the filing of an amended complaint curing the deficiencies of the dismissed claims, because the claims that are being dismissed here are all being dismissed for the same reason, *i.e.*, that a failure to follow state regulations in conducting prison disciplinary proceedings does not give rise to a § 1983 due process violation so long as the proceedings provided minimal due process under the Constitution, there is no conceivable basis on which the claims which are recommended to be dismissed could be repleaded so as to avoid future dismissal.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (finding leave to replead would be futile where even liberal construction of complaint established the problem with the cause of action pleaded in the *pro se* complaint "is substantive; better pleading will not cure it. Repleading would thus be futile.").  Accordingly, all claims should be DISMISSED for failure to state a claim, except insofar as Plaintiff has alleged that Plaintiff was set up to be charged with violating Inmate Rule 113.30, for which Plaintiff was subsequently denied due process at the ensuing disciplinary hearing when his assigned inmate assistant failed to comply with Plaintiff's requests, and no reason for such noncompliance was placed on the record.

## 2.     Motion to Amend

Instead of filing a response in opposition to Urban's motion, Plaintiff moved for leave to file an amended complaint which purportedly remedies some of the deficiencies

of the claims asserted in the original Complaint against Urban and Jamalkowski, most

notably, replacing the factual allegations in which Plaintiff concedes that on April 11,

2012, C.O. Moffat seized contraband UCC materials from Plaintiff's cell at Orleans, with

allegations that the seized materials were "assumed" to be contraband UCC materials,

*see*, *e.g.*, Proposed Amended Complaint,[4] ¶ 3 ("Plaintiff's cell was frisked by a CO

Moffat on April 11, 2013 [*sic*] in search of Uniform Commercial Code (UCC).  CO Moffat

found what he assumed was Uniform Commercial Code [ ] materials."), and to assert as

an additional claim that the prison disciplinary sentence imposed for the possession of

UCC materials was in violation of the Eighth Amendment's ban on cruel and unusual

punishment.  *Id.* ¶ 15 (alleging the prison disciplinary sentence of 18 months in SHU

caused Plaintiff "pain, suffering, physical injury and emotions distress.").  Defendants

argue in opposition that Plaintiff's motion should be denied as futile, Defendants'

Memorandum at 3-4, insofar as the allegations of the Proposed Amended Complaint do

not cure the deficiencies of Plaintiff's due process claims, *id.* at 4-7, and the length of

time to which Plaintiff was sentenced to SHU for possessing the contraband UCC

materials is not so long as to be considered totally without penological justification,

grossly disproportionate to the prison infraction, or involving unnecessary infliction of

pain so as to constitute cruel and unusual punishment in violation of the Eighth

Amendment.  *Id.* at 8-9.

Fed.R.Civ.P. 15 provides that leave to amend a pleading "shall be freely granted

when justice so requires."  An amended pleading may be filed pursuant to Fed.R.Civ.P.

15(a) where the new allegations do not unduly prejudice an opponent, are not the result

of undue delay or bad faith, and are not futile.  *Foman v. Davis*, 371 U.S. 178, 181

[4] A copy of the Proposed Amended Complaint is attached to Plaintiff's Motion.

(1962).  Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be permitted.  *Block v. First Blood Associates,* 988 F. 2d 344, 350 (2d Cir. 1993).  Where, however, a requested pleading amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993).  An amendment is futile "if the proposed amended [pleading] would be subject to 'immediate dismissal' for failure to state a claim or on some other ground."  *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir.1999).  In the instant case, Plaintiff's motion to amend is DENIED as futile.

Specifically, insofar as Plaintiff seeks leave to replead the factual allegations regarding the seizure of the UCC materials so as to not be construed as conceding the materials were contraband, in appealing the hearing decision, Plaintiff failed to challenge the nature of the seized materials, such that any challenge Plaintiff could raise regarding whether the materials were contraband UCC materials has not been exhausted.  Nor did Plaintiff challenge the prison disciplinary sentence of 18 months in SHU with attendant loss of privileges as in violation of the Eighth Amendment, and such claim also is unexhausted.  Because the claims in Plaintiff's Proposed Amended Complaint would be subject to dismissal for failure to exhaust, they are futile.  *See Dolce v. Suffolk County*, 2014 WL 655371, at * 6 (E.D.N.Y. Feb. 20, 2014) (denying to grant pro se inmate plaintiff leave to file amended complaint where "any amended complaint would fail because plaintiff did not exhaust administrative remedies." (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007)).  Plaintiff's motion to amend is, accordingly, DENIED.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant Jamalkowski's motion to dismiss (Doc. No. 11), should be GRANTED in part and DENIED in part; Defendant Urban's motion to dismiss (Doc. No. 21), should be GRANTED; Plaintiff's motion for leave to file an amended complaint (Doc. No. 25), is DENIED.

Respectfully submitted, as to Defendants' motions to dismiss for failure to state a claim,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


SO ORDERED, as to Plaintiff's motion
for leave to file an amended complaint.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      June 10, 2014
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 10, 2014
            Buffalo, New York